UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:** 5:26-cv-06230-BFM **Date:** November 10, 2026

**Title:** *Emanuel Jose Cruz Maldonado v. Fereti Semaia, et al.*

================================================================

Present: The Honorable Brianna Fuller Mircheff, United States Magistrate Judge

| | |
|---|---|
| Christianna Howard | N/A |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Petitioner | Attorneys Present for Respondent |
| N/A | N/A |

**Proceedings: (In Chambers) Order Denying Petition (ECF 1)**

Petitioner Emanuel Jose Cruz Maldonado filed this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 on October 21, 2026. (ECF 1 ("Pet.").) Respondents filed their Answer (ECF 8 ("Answer")) and Petitioner, his Reply (ECF 10 ("Reply")). After reviewing those filings, the Court **denies** the Petition.

## I. Factual Background

Petitioner is a noncitizen who was, at the time of filing, detained at the Adelanto Detention Facility, within the Central District of California. (Pet. ¶ 8.[1]) He entered the United States in 2006, when he was only six years old. (Pet.

[1] The Court previously issued an order noting that, at the time of the Answer, Petitioner was detained in California City, which is outside this District. (ECF 9.) Respondents' records reflect that Petitioner was in this District at the time the Petition was filed, and thus this Court has jurisdiction over the Petition. *Smith v. Campbell,* 450 F.2d 829, 832-34 (9th Cir. 1971) (holding that courts' jurisdiction attaches once a habeas petition is filed, and is not defeated by a later transfer of the detainee out of the jurisdiction); *see also Santillanes v. United States Parole Comm'n,* 754 F.2d 887, 888 (10th Cir. 1985)

¶ 13.) He has lived in the Oxnard area since then, working, providing for himself and his partner, and attending church. (Pet. ¶ 14.) He applied for Deferred Action for Childhood Arrivals in 2017 and never received a response to his application. (Pet. ¶ 14; *see also* ECF 8-1 at 5 (indicating that a DACA application was filed in 2021 and was pending at the time of arrest).)

On September 3, 2026, Petitioner was arrested by the Los Angeles Police Department for trespassing. (ECF 8-1 at 5.) Petitioner was taken into ICE custody upon his release from LAPD custody (*Id.*) According to the I-213, Petitioner was informed that he was subject of a warrant, and he was transported to the Los Angeles Field Office, and later, to Adelanto. (*Id.* at 4.) He has been in ICE custody since. (Pet. ¶ 16.)

Petitioner filed this Petition, alleging that his detention without a warrant or a pre-deprivation hearing violated procedural and substantive due process, and that those violations compel an order releasing him. (Pet. at 5-30.) In their Answer, Respondents argue that Petitioner was not entitled to more process than he received, and that the remedy for any procedural violation would not be release in any event. (Answer at 3-4.) They concede he "appears" to be entitled to a bond hearing, but that since the Ninth Circuit's decision in *Rodriguez Vazquez*, a bond hearing should be his for the asking. (Answer at 5-6.) Petitioner filed his reply, again urging the Court to order him released. (ECF 10.) The matter is fully briefed and ready for decision.

---

("[J]urisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change."). Moreover, the ICE detainee locator now reflects that Petitioner is back in the District. *See* https://locator.ice.gov/odls/ (last checked November 10, 2026). There is no question of this Court's jurisdiction, therefore.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:** 5:26-cv-06230-BFM **Date:** November 10, 2026

**Title:** *Emanuel Jose Cruz Maldonado v. Fereti Semaia, et al.*

==========================================================

## II. Analysis

### *A. Procedural Due Process*

Petitioner claims that he should have been given more process in connection with his initial detention, specifically, a "pre-deprivation hearing to assess if mandatory detention was required due to flight risk or danger to community." (Pet. at 7, 9.) The Court disagrees.

As a person who has been living in the United States for a long time, Petitioner certainly has a liberty interest in remaining out of custody. The Court disagrees, however, that his liberty interest is such that due process requires notice and a pre-deprivation hearing.

Courts in this Circuit, including this one, have found that noncitizens who have been released on *parole* have a liberty interest in maintaining that liberty, and that that liberty interest may require pre-deprivation notice and hearing. *E.g.*, *Zarief Kamel v. Santacruz*, No. 5:26-cv-03481-BFM, 2026 WL 1965112, at *2 (C.D. Cal. July 2, 2026) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). Those decisions rely on the premise that release from custody on parole is an "implicit promise" that parole "will be revoked only if [the individual] fails to live up to the parole conditions.'" *Id.* Not only is there a heightened liberty interest in maintaining parole once granted, but such individuals have already been found not to be a danger or flight risk, yielding a heightened risk of an erroneous deprivation of liberty. *Id.* at *3-4.

Some courts have found that DHS's acquiescence in a noncitizen's presence might, over time, give rise to an "implicit promise" akin to parole. *E.g., Gagik T. v. Chestnut*, No. 1:26-cv-04337-MWJS, 2026 WL 1837413, at *3 (E.D. Cal. June 25, 2026) (finding the government's course of conduct over six years, including not locating an individual when her visa expired, and twice

extending her employment authorization during the pendency of her asylum application "reflected a sustained decision to permit [petitioner's] liberty"); *see* Pet. at 7-8 (citing similar cases). Without deciding whether, and under what circumstances, such an inference might arise, this case does not present such facts. Indeed, here, the I-213 reflects that Petitioner's sole contact with the immigration bureaucracy before this detention was a DACA application that has yet to be adjudicated. (ECF 8-1 at 5.) The Court cannot find that DHS's conduct in accepting and not adjudicating Petitioner's DACA application gave rise to an inference that DHS intended to permit him to remain at liberty.

The risk of an erroneous deprivation of liberty in cases like this is simply not as high as it is in the case of an individual released on parole who was already evaluated and found not to pose a flight risk or danger to the community. *Jemna v. Warden of Otay Mesa Det. Ctr.*, No. 3:26-CV-00725-RBM-VET, 2026 WL 788172, at *5 (S.D. Cal. Mar. 20, 2026). And while Petitioner undoubtedly has a liberty interest in avoiding unjustified detention, section 1226(a) itself entitles him to a significant amount of process in connection with detention: arrest with an administrative warrant (unless an exception to the warrant requirement applies), a prompt custody decision roughly contemporaneous to his detention, the right to seek a custody redetermination before an immigration judge, and to appeal the IJ's decision, if necessary. *See* 8 U.S.C. § 1226(a), (c), 8 C.F.R. § 1003.19(a)-(c); *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022) ("Section 1226(a) and its implementing regulations provide extensive procedural protections that are unavailable under other detention provisions, including several layers of review of the agency's initial custody determination, an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change."). Nothing in the Petition

persuades the Court that *Mathews v. Eldridge* entitles him to more than what § 1226(a) requires—in particular, the advance notice or pre-deprivation hearing he seeks. (Pet. at 9-11.)

As even Respondents concede, however, he *is* entitled to the process owed under § 1226(a)—meaning that, if he is not mandatorily detained, Petitioner would be entitled to a bond hearing. The Court does not order such a bond hearing prophylactically, however: Petitioner has steadfastly argued that he is not asking for this Court to order a bond hearing. (Pet. ¶¶ 37, 42, 66-70.) Moreover, as Respondents point out, a bond hearing should be his upon request, so long as Petitioner is not mandatorily detained.

Under these circumstances, the available procedures are adequate to satisfy due process.

The Petition also alleges that Petitioner was arrested without a warrant. The Answer, however, attaches a warrant. (ECF 8-1 at 12.) The I-213 reflects that agents claimed, at least, to have a warrant at the time of Petitioner's arrest. (ECF 8-1 at 4.) Whether that claim was true or not, the date on the warrant is the same as the date of Petitioner's arrest on the I-213 (ECF 8-1 at 5), meaning that either Respondents had a warrant at the time of their arrest, or they prepared and served one quickly after. To the extent that the sequence reflects any failure to comply with the statutory warrant requirements, it would be a slight one, and certainly would not warrant release. *Tsendayush v. Bondi*, No. 5:26-CV-00970-SB-KES, 2026 WL 1880177, at *3 (C.D. Cal. June 30, 2026). The Court therefore finds no merit in Petitioner's warrant-related arguments.

Petitioner's procedural due process claim is, accordingly, denied.

*B. Substantive Due Process*

Petitioner argues in the alternative that violations of his substantive due process rights require his release. The Due Process Clause applies to "persons" within the jurisdiction of the United States. U.S. Const. amend. XIV. It "protects every one of these persons from deprivation of life, liberty, or property without due process of law." *Mathews v. Diaz*, 426 U.S. 67, 77 (1976). "Persons" includes both citizens and noncitizens. *Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001) (citation omitted). As such, while Congress has the authority to pass laws governing non-citizens "that would be unacceptable if applied to citizens," *Mathews*, 426 U.S. at 77, 79-80, its latitude to do so in the civil detention realm is not unlimited. At a "bare minimum," noncitizens subject to civil immigration detention—just like people detained civilly and individuals accused but not convicted of a crime—"cannot be subjected to conditions that 'amount to punishment.'" *See Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)); *see also Wong Wing v. United States*, 163 U.S. 228, 235 (1896) (concluding that "detention or temporary confinement" is "valid" to carry out "the provisions for the exclusion or expulsion of aliens," but that detention involving "imprisonment at hard labor" is unconstitutional without a criminal trial).

Civil detention may be deemed punitive "where it is excessive in relation to its non-punitive purpose, or is employed to achieve objectives that could be accomplished in so many alternative and less harsh methods." *Jones*, 393 F.3d at 934. This may be so where civil detention is excessively prolonged, even if not indefinite. *United States v. Torres*, 995 F.3d 695, 708-10 (9th Cir. 2021) (concluding that a pretrial criminal detainee's 21-month detention was "approaching the limits of what due process can tolerate" and that "at some point, regardless of the risks associated with Torres's release, due process will require that he be released if not tried"). In the context of civil detention before

a criminal trial, courts consider not only the length of the detention, but also the government's role in causing the detention to be prolonged. *Id.* at 708.

Civil detention can also violate due process when detainees are subject to conditions so harsh as to give rise to an inference that the detention is punitive. *See Jones*, 393 F.3d at 932. People detained under civil rather than criminal process are "entitled to more considerate treatment than [their] criminally detained counterparts." *Id.* (cleaned up). Accordingly, when a detainee "is confined in conditions identical to, similar to, or more restrictive than, those in which . . . criminal counterparts are held," courts "presume that the detainee is being subjected to punishment." *Id.* (cleaned up). If conditions of civil confinement are equivalent to or more restrictive than criminal detention, they are presumptively punitive and the burden shifts to the government "to show (1) legitimate, non-punitive interests justifying the conditions of the detainee's confinement and (2) that the restrictions imposed are not excessive in relation to these interests." *King v. Cnty. of L.A.*, 885 F.3d 548, 557 (9th Cir. 2018) (cleaned up).

Though neither *Torres* nor *Jones* arise in the immigration context, they provide helpful markers to guide this Court's analysis of the kinds of civil detention that might violate substantive due process. *See Doe v. Becerra*, 723 F. Supp. 3d 688, 691 (N.D. Cal. 2024) (considering the above factors from *Torres* and *Jones* in evaluating substantive due process claim raised by an individual in immigration detention).

While no period of detention is trifling, Petitioner here is not "indefinitely" detained. He was detained in September 2026, pending a hearing in his removal case. *Cf. Torres*, 995 F.3d at 709-10 (21 months of pretrial detention for person charged with criminal offense was "approaching the limits of what due process can tolerate"); *Doe v. Becerra*, 732 F. Supp. 3d 1071, 1083 (N.D. Cal. 2024) (finding 30 months of immigration detention to weigh in favor

of a finding of substantive due process violation). Petitioner has not pointed to anything Respondents did to prolong that detention unnecessarily. And while Petitioner references the difficulty of being in detention, he presents no argument, let alone evidence, that the conditions are worse than those to which individuals serving criminal convictions are subjected. *Doe*, 732 F. Supp. 3d at 1089 ("Determining whether the conditions at [an immigration detention facility] are worse 'as a whole' than at the state facilities where Mr. Doe was imprisoned is a difficult comparison that would require comprehensive evidence."). Thus, none of these factors weigh in Petitioner's favor.

Nevertheless, Petitioner suggests that his detention is significantly out of line with the government's interests in detention, because he is neither a flight risk nor a danger to the community. The Court cannot make that finding on this record. A bond hearing is the primary test of whether detention is excessive to the government's interest in detention. *See Martinez Leiva v. Becerra*, No. 23-CV-02027-CRB, 2023 WL 3688097, at *5 (N.D. Cal. May 26, 2023). And here, Petitioner has not shown that a bond hearing cannot effectively test whether his detention is appropriate, because he has apparently not requested such a hearing.

The Court denies Petitioner's substantive due process claim. Such denial should be without prejudice to a renewed claim on a more developed record or after a lengthier period of detention.

## IV. Conclusion

Accordingly, the Petition is **denied.** Judgment shall be entered accordingly.

cc: Counsel of Record

Initials of Preparer: ch